# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DON JUAN BUTLER,

    Plaintiff,

    v.                                               Case No. 10-C-653

SGT. MEYERS, MR. LEEMAN,
MR. LAWLER, JOHN DOE, sued as 1 through 12,
and JANE DOE, sued as 1 through 12,

    Defendants.

## DECISION AND ORDER

    The plaintiff, a Wisconsin state prisoner, filed a pro se complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed in forma pauperis. The plaintiff has been assessed and paid an initial partial filing fee of $31.39, as required under 28 U.S.C. § 1915(b)(1).

    The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

    A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court

may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 [1957]). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Legal

conclusions must be supported by factual allegations. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 [7th Cir. 2004]); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 [1976]).

According to the sworn complaint, the plaintiff was a pretrial detainee at the Milwaukee County Jail (MCJ) at all times relevant. The defendants, Sgt. Meyers, Mr. Leeman, Mr. Lawler, and John/Jane Does 1-12, are all sheriff's deputies at the MCJ.

The plaintiff avers that on August 24, 2009, he was transferred to the MCJ, at which time he was placed in punitive segregation without notice or a hearing. For over a month, his diet consisted of "segregation loaf," which is "food ground up into unpalatable, barely edible, foul-smelling loaf." (Complaint at 2). After awhile, the plaintiff was unable to bring himself to regularly eat the segregation loaf and he lost weight and had hunger pains.

On September 18, 2009, after the plaintiff's repeated requests to speak with a supervisor were denied, he covered his cell window and refused to uncover it until a "supervising sheriff was produced." Id. at 3. Sgt. Meyers appeared and the plaintiff requested to be removed from the segregation loaf diet and seen by health services

personnel. Sgt. Meyers denied the plaintiff's requests and, consequently, the plaintiff refused to uncover his window. In response, according to the plaintiff, Sgt. Meyers called a "CERT TEAM" and administered "an extremely and unnecessarily large amount" of a chemical agent on the plaintiff through the cell door food port. Id. The plaintiff complied and he was then cuffed, removed from his cell, and given a shower. He was placed back into the same cell without clothing, bedding, property, or possessions.

Upon his return to his cell, the plaintiff asked that the cell be cleaned because there were large "oleoresin capsicum" - also known as OC spray or pepper spray - deposits all over the cell. Id. However, he was still placed in the cell naked, in "tether and cuffs", for approximately one week. Id. During this time, all defendants "were constantly made aware that [the plaintiff] was burning and in pain from the oleoresin capsicum ("O.C.") agent, could not sleep, was unable to vacate his bowels because he was in restraints, and needed to see health services personnel[,]" but they refused to remedy his situation. Id. at 3-4. As a result, the plaintiff "was in constant, extreme pain; unable to use the toilet for five days; without clothing, bedding, religious text, and hygiene materials for one week; constantly cold; and subjected to humiliation, mockery, and ridicule." Id. at 4. He also had to lie on a concrete slab all day and night, or walk around his cell for up to eighteen hours a day to remain warm, and he was sleep-deprived and suicidal.

After remaining in restraints under these conditions for four days, the plaintiff suffered an emotional breakdown and pleaded to be seen by a supervising sheriff, but his request was denied. He held his food port to prevent guards from closing it. Defendant Sgt. John Doe arrived at the plaintiff's cell, pepper-sprayed the plaintiff and slammed the plaintiff's fingers in the food port, injuring them. The plaintiff, injured and frightened, ran

to the back of his cell and the John Doe defendant continued to spray mace all over his back and legs. Defendants John and Jane Does 1-12 then shut off the water in the plaintiff's cell and refused to allow him a shower. The plaintiff also was denied a wet towel, or medical attention. The plaintiff was "finally released from restraints and given clothing and other property approximately one week after his painful, violent ordeal began." Id. at 5.

The plaintiff claims that defendants' acts and omissions violated his rights under the Fourteenth Amendment to the United States Constitution. Specifically, he claims his rights were violated when: (1) defendants punished, segregated, and fed him a diet of segregation loaf without due process; (2) he was arbitrarily and maliciously placed in restraints for one week and his freedom of movement and liberty was unreasonably restrained; (3) he was denied life's basic necessities when he was denied an adequate diet for more than an entire month, denied requested medical care, was confined naked to a dirty, contaminated and cold cell for one week and denied hygiene; and (4) he was subjected to excessive force and deliberate indifference on September 22, 2009, when he was sprayed, and left untreated, in a cell with no running water. The plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

**1.      Initial Placement in Segregation**

Unlike a convicted and sentenced prisoner, a pretrial detainee – not yet found guilty of any crime – may not be punished for misconduct while in custody without due process. Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); see Higgs v. Carver, 286 F.3d 437, 438-39 (7th Cir. 2002); Zarnes v. Rhodes, 64 F.3d 285, 291 (7th Cir. 1995). To establish a right to due process, a pretrial detainee must demonstrate either (1) an "expressed intent to

punish on the part of detention facility officials" or (2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. Bell, 441 U.S. at 538-39; see Rapier v. Harris, 172 F.3d 999, 1005 (7th Cir. 1999).

The plaintiff's allegations that, upon arrival at the MCJ, he was placed in punitive segregation without notice and a hearing implicate his rights under the Fourteenth Amendment. However, the plaintiff does not allege personal involvement of the part of any defendant relative to his placement in punitive segregation without due process. Thus, the plaintiff may not proceed on a due process claim based on these allegations. See Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

## 2. Conditions of Confinement

Although the Eighth Amendment protects only convicted prisoners from cruel and unusual punishment, the same standard applies to pretrial detainees under the due process clause of the Fourteenth Amendment. See Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007) (citations omitted). To succeed on a conditions of confinement claim, the plaintiff must establish both objective and subjective components. First, he must show that the deprivation denied him "the minimal civilized measure of life's necessities." Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 [1981]). Second, he must establish that the defendants acted with deliberate indifference, that is, they were aware of and disregarded an excessive risk to his health. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008).

The plaintiff claims he was served "barely edible" and "foul-smelling" segregation

loaves at the MCJ, in violation of his constitutional rights. Food served in prison must be nutritious, see Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996), but it does not have to be delicious or even particularly appetizing, Lunsford v. Bennett, 17 F.3d 1574, 1580-81 (7th Cir. 1994). The plaintiff alleges he was on a segregation loaf diet for over a month and that he lost weight during that time. However, he does not allege the segregation loaf lacked nutritional value. Placement on a temporary "nutri-loaf" diet is not of itself a constitutional violation. See Gates v. Huibregtse, 69 Fed. Appx. 326, 327 (7th Cir. 2003) (unpublished) (citing LeMaire v. Maass, 12 F.3d 1444, 1456 [9th Cir. 1993]). Thus, the plaintiff may not proceed on a constitutional claim based on segregation loaf allegations.

Next, the plaintiff claims the conditions he was subjected to for one week beginning September 18, 2009 – in restraints in a cold cell contaminated with chemicals, without clothing, bedding, or hygiene materials – violated his constitutional rights. The Eighth Amendment requires that the plaintiff be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." Sain, 512 F.3d at 893-94 (quoting Farmer, 511 U.S. at 832).

> A lack of heat, clothing, or sanitation can violate the Eighth Amendment. See Lewis v. Lane, 816 F.2d 1165 (7th Cir. 1987) (an allegation of inadequate heating may state an Eighth Amendment violation); Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide ... reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing)."); Maxwell v. Mason, 668 F.2d 361, 365 (8th Cir. 1981) (confinement in isolation without adequate clothing or bedding supports an Eighth Amendment claim: "clothing is a 'basic necessity of human existence'"). In McCray v. Burrell, 516 F.2d 357 (4th Cir. 1975), an inmate was confined 2 days in a cell where for part of the first night a concrete slab was his bed. A mattress was furnished later during that night, but no blankets were supplied. The inmate was so cold he tore open the mattress and slept inside it. He also was denied articles of

> personal hygiene. The court found a violation of the Eighth Amendment. Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so. This is true when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth, for example "a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006); but see, Scarver v. Litscher, 434 F.3d 972, 976-77 (7th Cir. 2006); Bruscino v. Carlson, 854 F.2d 162, 164-65 (7th Cir. 1988). Although "some form of temporary restraint" may be necessary against those who pose a threat to themselves and others, French v. Owens, 777 F.2d 1250, 1253-54 (7th Cir. 1985), the court cannot conclude at this time that those circumstances existed here.

The plaintiff may proceed on a conditions of confinement claim against all defendants based on the week-long conditions in his cell while he also was in restraints. At this stage, general allegations that defendants were involved in unconstitutional conditions of confinement are sufficient to state a claim. See Antonelli, 81 F.3d at 1429; see also Reed McBride, 178 F.3d 849, 853-55 (7th Cir. 1999) (holding that prisoner had sufficiently stated a claim where prisoner alleged officials were aware of inhumane conditions and did nothing to alleviate the problem sufficiently stated a claim).

**3.   Excessive Force**

The plaintiff claims that the John Doe and Jane Doe defendants used excessive force against him on September 22, 2009, when defendant Sgt. John Doe pepper sprayed him and then left him untreated in a cell without running water. Because he is a pretrial detainee, the plaintiff's excessive force claim also arises under the Fourteenth Amendment. Forrest v. Prine, __ F.3d __, 2010 WL 3398157, at *3 (7th Cir. August 31,

2010) (citations omitted). The right to due process under the Fourteenth Amendment "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Forrest, 2010 WL 3398157, at *4 (citing Lewis v. Downey, 581 F.3d 467, 475 [7th Cir. 2009]). However, absent explanation how any protections guaranteed by the Fourteenth Amendment provide more protection than a pretrial detainee would receive under traditional Eighth Amendment standards, the court borrows Eighth Amendment standards to analyze such claims. Id. (citing Lewis, 581 F.3d at 475).

"The unnecessary and wanton infliction of pain on a prisoner violates his rights under the Eighth Amendment." Id. (quoting Lewis, 581 F.3d at 475) (internal quotation omitted). Force used in "a good-faith effort to maintain or restore discipline," does not rise to the level of being unnecessary and wanton. Hudson v. McMillian, 503 U.S. 1, 7 1992). Only force intended "maliciously and sadistically to cause harm" to the prisoner falls under the standard. Id.

> Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force.

Forrest, 2010 WL 3398157, at *3 (quoting Lewis, 581 F.3d at 477).

in this case, the plaintiff's assertions that defendant Sgt. John Doe pepper-sprayed him and slammed his fingers in the food port and that defendants John/Jane Does 1-12 shut off the water in his cell and did not allow him to wash, state excessive force and conditions of confinement claims at this stage of the proceedings. Therefore, the plaintiff may proceed on these claims.

In sum, the court finds the plaintiff may proceed on claims under the due process clause of the Fourteenth Amendment as follows: (1) against all defendants on his conditions of confinement claim based on week-long placement in a cold, contaminated cell without clothing, bedding, or hygiene materials, and in restraints; and (2) against defendants John and Jane Does 1-12 on his excessive force and conditions of confinement claims based on his assertions surrounding the September 22, 2009, pepper spray incident and placement in cell without running water following the incident.

The plaintiff is advised he will need to identify the John and Jane Doe defendants. He may use discovery to learn their identities.

### **Motion for Appointment of Counsel**

The plaintiff has filed a motion to appoint counsel. Although civil litigants do not have a constitutional or statutory right to appointed counsel, the court has the discretion to request attorneys to represent indigents in appropriate cases under 28 U.S.C. §1915(e)(1). Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007); Luttrell v. Nickel, 129 F.3d 933, 936 (7th Cir. 1997) (citing Zarnes v. Rhodes, 64 F.3d 285, 288 [7th Cir. 1995]). As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. Pruitt, 503 F.3d at 654; Zarnes, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. Pruitt, 503 F.3d at 654-655 (citing Farmer v. Haas, 990 F.2d 319, 322 [7th Cir. 1993]).

In this case, the plaintiff has not provided any indication that he has unsuccessfully attempted to obtain legal counsel on his own. Regardless, the court notes that the plaintiff

has provided a detailed complaint setting forth his claims. Moreover, the issues in this case appear at this stage to be straightforward and uncomplicated. Therefore, given the nature of the case and at this juncture, it appears that the plaintiff is competent to litigate this case himself. Therefore, the plaintiff's motion for appointment of counsel will be denied.

**NOW, THEREFORE IT IS ORDERED** that the plaintiff's motion for leave to proceed in forma pauperis (Docket #2) be and hereby is **granted** as stated herein.

**IT IS FURTHER ORDERED** that the plaintiff's motion for appointment of counsel (Docket #6) be and hereby is **denied**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the named defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because in forma pauperis plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $318.61

balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

> Honorable Patricia J. Gorence
> % Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which

do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this <u>22nd</u> day of October, 2010.

                                        BY THE COURT:

                                        s/Patricia J. Gorence
                                        PATRICIA J. GORENCE
                                        United States Magistrate Judge