# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

DON JUAN BUTLER,

    Plaintiff,

    v.                                              Case No. 10-CV-653

SGT. MEYERS, MR. LEEMAN,
MR. LAWLER, MR. HENDERSON,
SGT. DICKAU, and MR. HOLT,

    Defendants.

## DECISION AND ORDER

The plaintiff, Don Juan Butler, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983 and was granted leave to proceed in forma pauperis. The plaintiff, a pretrial detainee at all times relevant, is proceeding on the following claims under the Fourteenth Amendment: (1) conditions of confinement claim against defendants Sergeant Meyers, Officer Leeman, and Officer Lawler based on week-long placement in a cold, contaminated cell without clothing, bedding, or hygiene materials, and in restraints; (2) excessive force claim against defendant Sergeant Dickau based on allegations he pepper-sprayed the plaintiff and slammed his fingers in his cell food port door; and (3) conditions of confinement claim against defendants Officer Henderson, Sergeant Dickau, and Officer Holt based on allegations that, following the pepper spray incident, they shut off the water in his cell and did not allow him to wash. The defendants have filed a motion for summary judgment, which will be addressed herein.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence,

and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## **RELEVANT UNDISPUTED FACTS**[1]

The plaintiff was a pretrial detainee at the Milwaukee County Correctional Facility Central (Jail), located at 949 North 9th Street, Milwaukee, Wisconsin, at all times relevant. Defendants Brett Meyers, Michael Leeman, Brandon Lawler, Sean Henderson, and Charles Holt were correctional officers at the Jail, and defendant Todd Dickau was a sergeant at the Jail at all times relevant.

The plaintiff was on suicide watch from September 16 through September 23, 2009. He was on a 15-minute watch, meaning that an officer checked on him every 15 minutes and recorded his status. The plaintiff was placed on suicide watch following a determination that he was an imminent threat of physical injury to himself. Specifically, the 15-minute suicide watch was initiated based on the plaintiff's statement that he wanted to kill himself and then being found in his cell with his sock around his neck making a sign that he wanted to choke himself.

---

[1] This section is taken from the plaintiff's affidavit filed in response to the defendants' motion for summary judgment, the plaintiff's sworn complaint, see Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996), the defendants' Facts section from their supporting brief, and the defendants' summary judgment affidavits,.
  The defendants did not submit a statement of numbered, proposed material facts as required by the Local Rules. See Civil L.R. 56(b)(1)(C) (E.D. Wis.). Their supporting brief, however, contains a "Facts" section. Although this section does not contain numbered paragraphs, it does cite to the record and, in this case, the court deems it adequate for use in resolving the motion. Therefore, the court will not deny the defendants' motion for summary for failure to submit a statement of proposed material facts. See Civil L.R. 56(b)(1)(C)(iii) (E.D. Wis.). The defendants are advised that they must comply with the Local Rules in the future.
  Finally, the court notes that the plaintiff submitted a document entitled Response to Defendants' Motion for Summary Judgment (Docket 86), by which he purports to dispute certain paragraphs from defendants Holt, Henderson, and Dickau's, and Officer Kirksey's, summary judgment affidavits. However, the plaintiff's responses are not sworn, nor do they cite to the record. Thus, they will not be considered in deciding the motion for summary judgment. See Fed. R. Civ. P. 56(c)(1).

Jail inmates on suicide watch are issued a "suicide gown" and a "suicide mattress." (Affidavit of Sean Henderson [Henderson Aff.] ¶ 27; Affidavit of Todd Dickau [Dickau Aff.] ¶ 18; Affidavit of Kenyon Kirksey [Kirksey Aff.] ¶ 10). The plaintiff would not have been able to harm himself with either of these items. There would have been no reason to remove or deny the plaintiff's soap and toothpaste because of the suicide watch. The average temperature in the Jail is approximately 72 degrees, and that was also the average temperature in September 2009.

On September 18, 2009, after the plaintiff's repeated requests to speak with a supervisor were denied, he covered his cell window and refused to uncover it. A cell extraction was conducted during which time the plaintiff was sprayed with oleoresin capsicum (OC) spray – also known as pepper spray – and extracted from his cell. The plaintiff was then cuffed, removed from his cell, and given a shower. He was placed back into the same cell "with no clothing, no property, no hygiene, no pencil of any kind or any other property plaintiff is entitled [sic]." (Affidavit of Don Juan Butler [Butler Aff.] at 1). The cell was not cleaned and he was placed back in it in "waist-cuff restraints." Id. He was not offered a blanket and he remained in the cell, "hand-cuffed and waist-cuffed," for seven days. Id.

On Saturday, September 19, 2009, while the plaintiff was on the 15-minute suicide watch, defendants Henderson and Holt and Officer Kirksey were on duty at the Jail.[2] At approximately 9:25 p.m., the plaintiff asked defendant Holt for some toilet paper. The plaintiff was given the toilet paper, whereupon he placed his arms out of his food chute and

---

[2] The plaintiff avers that the excessive force incident took place on September 22, 2009, not September 19, 2009. (Butler Aff. at 2). However, this dispute is not material.

- 4 -

stated, "Fuck that, suit up and I'm going hard like my dick!" (Henderson Aff. ¶¶ 4-6; Affidavit of Charles Holt [Holt Aff.] ¶ 4.) Defendant Holt attempted negotiating with the plaintiff, but he refused to comply and shouted, "fuck that, you niggas are going to have to suit up." (Holt Aff. ¶ 5.)

Defendant Henderson entered the subpod to negotiate with the plaintiff, but the plaintiff refused orders to withdraw his arms and allow his chute to be secured. Defendants Holt and Henderson and Officer Kirksey negotiated with the plaintiff for approximately ten minutes, but he refused numerous orders to comply with their directives. The officers exited the subpod and the plaintiff made verbal threats to staff and stated, "I'm going to piss in the dayroom, if don't no [sic] sergeant come up here." (Henderson Aff. ¶¶ 7-10; Holt Aff. ¶¶ 6-7).

At 9:35 p.m., defendant Holt notified defendant Sergeant Dickau of the situation via phone. At this point, all activities in the subpod had been stopped, such as recreational time and cell inspections. At approximately 9:40 p.m., defendant Dickau arrived on the pod to provide assistance and gain control of the plaintiff.

Defendants Dickau, Holt, and Henderson entered the subpod to gain compliance from the plaintiff. Defendant Dickau sprayed the plaintiff with OC spray twice, shut the food chute door on his hand, lifted the food chute door so the plaintiff could remove his hand, and then closed the food chute door. The parties agree that defendant Dickau sprayed the plaintiff twice with OC spray. However, the sequence of events is disputed in that the plaintiff avers that after defendant Dickau entered the subpod and sprayed him with OC, the officer slammed the door on his hand. The defendants, on the other hand, aver that the plaintiff's hand became caught by the food chute door because he quickly placed his

hand out the door as defendant Dickau was closing the chute. Defendant Dickau then sprayed the plaintiff with OC spray twice when he would not remove his hand so the chute could be closed. After defendant Dickau closed the chute, defendant Henderson secured the food chute and defendants Dickau, Holt, and Henderson exited the subpod.

The parties dispute whether the plaintiff was offered medical care after the incident. The plaintiff avers that he was not offered medical attention or OC aftercare. The defendants aver that the plaintiff was offered, and refused, medical care. Specifically, defendant Henderson avers that he asked the plaintiff if he needed medical care because of the OC exposure and the plaintiff stated, "Fuck your medical, I don't need shit. I washed that shit off my hands. I'm good." (Henderson Aff. ¶ 24.) Defendant Henderson again asked the plaintiff if he wanted to get into the shower for OC aftercare, but the plaintiff refused OC aftercare. The plaintiff continued to be on suicide watch.

There is a dispute about whether the water to the plaintiff's cell was shut off after the incident. The plaintiff avers that the water was shut off, but he does not say how long he was without water. The defendants aver that the water to the plaintiff's cell was not turned off after the incident.

## ANALYSIS

**Conditions of Confinement Claim Against Defendants Meyers, Leeman, and Lawler**

The defendants contend that the plaintiff has failed to demonstrate a constitutional violation based on the conditions of his confinement because he failed to show that the defendants acted with deliberate indifference or that they were aware of and disregarded an excessive risk to his health. They further maintain that he has failed to demonstrate that he was housed under inhumane conditions because he was provided with adequate

food, clothing, shelter, and medical care.

The plaintiff maintains that he was kept in inhumane conditions at the jail, he was kept in hand-cuffs and waist-cuffs for seven days, and he received no due process. He also contends that the defendants did not address the conditions of confinement claim in their motion for summary judgment and, accordingly, did not deny a constitutional violation based on his placement in such conditions for seven days.

Although the Eighth Amendment protects only convicted prisoners from cruel and unusual punishment and does not apply to pretrial detainees, the same standard applies to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. See Williams v. Rodriguez, 509 F.3d 392, 401 (7th Cir. 2007) (citations omitted). Therefore, the court will apply the Eighth Amendment standard to the plaintiff's Fourteenth Amendment conditions of confinement claim. See Board v. Farnham, 394 F.3d 469, 477-78 (7th Cir. 2005).

To succeed on a conditions of confinement claim, the plaintiff must first establish both objective and subjective components. First, he must show that the deprivation denied him "the minimal civilized measure of life's necessities." Gillis v. Litscher, 468 F.3d 488, 491 (7th Cir. 2006) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 [1981]). Second, he must establish that the defendants acted with deliberate indifference, that is, they were aware of and disregarded an excessive risk to his health. See Farmer, 511 U.S. at 837; Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008). "Deliberate indifference requires a showing of 'more than mere or gross negligence, but less than the purposeful or knowing infliction of harm.'" Collins v. Seeman, 462 F.3d 757, 762 (7th Cir. 2006) (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003).

The plaintiff's conditions of confinement claim must be considered in the context of the plaintiff's status at the time. The plaintiff was placed on suicide watch on September 16, 2008, because he had said he wanted to commit suicide and was found with a sock around his neck indicating he wanted to choke himself. The plaintiff was placed in handcuffs and waist cuffs for seven days. During the time he was on suicide watch, the plaintiff was checked on every 15 minutes and a log was kept on these checks. The plaintiff was issued a "suicide gown" and a "suicide mattress," but he did not have his clothing or property while on suicide watch.

In Cavalieri v. Shepard, 321 F.3d 616, 621 (7th Cir. 2003), the court noted that there are high rates of suicide in prison, which are higher than the general population, and even higher rates for pretrial detainees. "As a result, prisons and jails have developed procedures for dealing with prisoners who display suicidal tendencies, such as removing items that could be used as a suicide weapon, like sheets or a study telephone cord, or not leaving those prisoners unattended." Id. A jail has a duty with regard to inmates they know are at substantial risk of committing suicide in that they may not intentionally disregard the risk. See Rosario v. Brawn, __ F3d.__, 2012 WL 661679 at *4 (7th Cir. March 1, 2012).

In this case, the plaintiff's own clothing and property were removed from his cell to eliminate a possibility that he would harm himself. Instead, he was provided with a "suicide gown" and "mattress." The restrictions imposed on the plaintiff were non-punitive and designed to prevent him from harming himself. The plaintiff has not presented evidence from which a fact finder could conclude that the conditions while he was on suicide watch were anything other than a justified response to harm himself. Thus, under the

circumstances, the defendants did not deprive the plaintiff of the "minimal civilized measure of life's necessities." Rhodes, 453 U.S. at 347.

Even if the court were to conclude that the conditions of confinement constituted a serious deprivation, the plaintiff has not established that the defendants acted with deliberate indifference to him. They knew that the plaintiff was on suicide watch and took precautions – such as removing his property, clothing and other items that posed a possible risk – so that he would not be able to harm himself. The plaintiff was checked on every 15 minutes while on suicide watch. Such actions do not constitute deliberate indifference.

Accordingly, based on the foregoing, the defendants' motion for summary judgment as to the plaintiff's conditions of confinement claim against defendants Meyers, Leeman, and Lawler will be granted.

### Excessive Force and Conditions of Confinement Claims Against Defendants Henderson, Dickau, and Holt

The defendants contend that the plaintiff has not shown that excessive force was applied against him maliciously and sadistically to cause him harm. Rather, according to the defendants, the facts demonstrate that force was used in a good-faith effort to maintain or restore discipline, which is not a constitutional violation. The plaintiff contends that smashing his hand in the food chute door and maliciously spraying him with OC spray constituted excessive use of force. According to the plaintiff, the parties do not agree on the facts and, therefore, the defendants are not entitled to summary judgment on this claim.

The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits

"unnecessary and wanton infliction of pain" on prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992). Because he is a pretrial detainee, the plaintiff's excessive force claim arises under the Fourteenth Amendment. Forrest v. Prine, 620 F.3d 739, 743-44 (7th Cir. 2010) (citations omitted). The right to due process under the Fourteenth Amendment "provides at least as much, and probably more, protection against punishment as does the Eighth Amendment's ban on cruel and unusual punishment." Id. at 744 (citing Lewis v. Downey, 581 F.3d 467, 475 [7th Cir. 2009]). However, absent explanation how any protections guaranteed by the Fourteenth Amendment provide more protection than a pretrial detainee would receive under traditional Eighth Amendment standards, the court borrows Eighth Amendment standards to analyze such claims. Forrest, 620 F.3d at 744 (citing Lewis, 581 F.3d at 475).

"The unnecessary and wanton infliction of pain on a prisoner violates his rights under the Eighth Amendment." Forrest, 620 F.3d at 744 (quoting Lewis, 581 F.3d at 475) (internal quotation omitted). Force used in "a good-faith effort to maintain or restore discipline," does not rise to the level of being unnecessary and wanton. Hudson, 503 U.S. at 7. Only force intended "maliciously and sadistically to cause harm" to the prisoner falls under the standard. Id.

> Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force.

Forrest, 620 F.3d at 744-45 (quoting Lewis, 581 F.3d at 477).

In this case, after the plaintiff received the toilet paper he requested, he put his hands out of the food chute and refused to withdraw his hands back into his cell to allow

- 10 -

the food chute door to be closed. Defendant Henderson attempted to negotiate with the plaintiff for about ten minutes to get him to withdraw his hands back into the cell. The plaintiff refused numerous orders to comply. After that did not work, defendants Holt and Henderson, along with Officer Kirksey, left the subpod and the plaintiff made verbal threats to staff. All activities in the subpod were stopped.

Defendant Holt notified defendant Dickau of the situation, who arrived on the pod about five minutes later to provide assistance. Defendants Dickau, Holt, and Henderson entered the subpod to gain compliance from the plaintiff. Defendant Dickau shut the food chute door on the plaintiff's hand, sprayed the plaintiff with OC spray twice, lifted the food chute so the plaintiff could remove his hand, and closed the food chute door. After the plaintiff removed his hand. defendant Henderson secured the food chute and defendants Dickau, Holt, and Henderson left the subpod.

In <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 834 (7th Cir. 2001), a prisoner alleged that a correctional officer violated his rights under the Eighth Amendment by "slam[ming] [his] hand in the cuffport hatch, causing severe pain, swelling and bruising." The Court of Appeals for the Seventh Circuit held that the minor injury sustained by the inmate was insufficient to sustain his claim, even assuming the prisoner's version that the officer slammed the cuffport door on his hand with malicious intent to harm him. <u>Id.</u> at 838, 839-40. The court reasoned that a "rational jury could draw one of only two possible conclusions: that the incident was an accident, or that [the officer] deliberately and perhaps unnecessarily applied a relatively minor amount of force to achieve a legitimate security objective" and that "[n]either scenario would involve a use of force that was 'repugnant to the conscience of mankind.'" <u>Id.</u> at 839. Thus, the court stated that even if

they found the officer's action an unnecessary application of force, "the minor nature of the injury coupled with the absence of any other indicia of malice on [the officer's] part would force us to conclude that it does not rise to the level of a constitutional violation." Id. at 840 (citation omitted).

The facts of this case and Outlaw are very similar with regard to the food chute issue, although this case also involves the use of OC spray. Prison guards may use chemical sprays when reasonably necessary to subdue recalcitrant prisoners because orders must be obeyed, and there are only so many choices available to correctional officers when inmates refuse. Soto v. Dickey, 744 F.2d 1260, 1267, 1270 (7th Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). The plaintiff was sprayed with OC spray only twice after he refused numerous orders from the correctional officers, verbally threatened an officer, and after the defendants attempted negotiations with the plaintiff. By this time, all other activities on the subpod, such as recreational time and cell inspections, had been stopped because of the incident.

Based on these facts, the force used against the plaintiff was done in a good faith effort to maintain discipline and order and was reasonable and necessary to control a volatile situation. See Hudson, 503 U.S. at 7. Therefore, the court finds that no reasonable fact finder could conclude that excessive force was used against the plaintiff. See Forrest, 620 F.3d at 744-45.

Although the parties dispute whether the plaintiff was offered medical care and OC aftercare following the incident, the plaintiff remained on suicide watch and was checked on every 15 minutes. The suicide check logs show that the plaintiff was observed on September 18, 2009, during the time period following the incident. There is no indication

that the plaintiff suffered any injury or that he requested treatment after the incident. Additionally, the plaintiff avers that the defendants turned off the water to his cell following the incident. The defendants deny this. However, the plaintiff does not indicate the length of time his water was shut off and there is no indication it was for a lengthy period of time.

Under the circumstances, the plaintiff has not shown that he suffered a serious deprivation to support a constitutional violation. Accordingly, the defendants' motion for summary judgment as to this conditions of confinement claim will be granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket #82) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that this case is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of March, 2012.

                                      BY THE COURT:

                                      s/Patricia J. Gorence
                                      PATRICIA J. GORENCE
                                      United States Magistrate Judge